**Affirmed as Modified and Opinion Filed December 7, 2017**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-01466-CR

**ARTHUR LEE BERRY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court of Appeals No. 2**
**Dallas County, Texas**
**Trial Court Cause No. MA-1658501-M**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Stoddart
Opinion by Justice Stoddart

A jury convicted Arthur Lee Berry of failure to identify as a fugitive, a class A misdemeanor. *See* TEX. PENAL CODE ANN. § 38.02(b), (d)(2). The trial court assessed punishment at 60 days in jail. Berry argues on appeal the evidence is legally insufficient to establish that the peace officer lawfully detained him at the time of the alleged offense and that the trial court improperly assessed attorney's fees against him. We modify the trial court's judgment to delete the order to pay the expenses of a court appointed attorney and affirm the judgment as modified.

We review a challenge to the sufficiency of the evidence on a criminal offense for which the State has the burden of proof under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App.

2014). Under this standard, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2011). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Therefore, in analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* When the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict and therefore defer to that determination. *Id.* Direct and circumstantial evidence are treated equally: circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.*

As applicable here, a person commits an offense if he intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer who has lawfully arrested or detained the person. TEX. PENAL CODE ANN. § 38.02(b)(1), (2). The offense is a class A misdemeanor if it is shown the defendant was a fugitive from justice at the time of the offense. *Id*. § 38.02(d)(2).

There are three distinct types of police-citizen interactions: (1) consensual encounters, (2) investigative detentions, and (3) arrests. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *Wygal v. State*, 526 S.W.3d 729, 735 (Tex. App.—Houston [1st Dist.] 2017, no pet.). For Fourth Amendment purposes, a detention occurs "[w]hen a police officer detains someone by restricting his or her movements through either a show of force, the use of physical restraint, or by communicated commands," such that the citizen is no longer free to move independent of police direction. *Grissom v. State*, 262 S.W.3d 549, 552 (Tex. App.—Texarkana 2008, no pet.).

No bright line rule governs when a consensual encounter becomes a detention. *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). "Generally, however, when an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no longer consensual." *Id.* "If ignoring the request or terminating the encounter is an option, then no Fourth Amendment seizure has occurred." *Wade*, 422 S.W.3d at 668.

A lawful investigative detention must be supported by reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Brodnex v. State*, 485 S.W.3d 432, 437 (Tex. Crim. App. 2016). This standard is objective and disregards the officer's subjective intent. *Id.* It is based on the totality of the circumstances. *Derichsweiler*, 348 S.W.3d at 914. The detaining officer need not be personally aware of every fact that objectively supports reasonable suspicion to detain because the cumulative information known to the cooperating officers, including police dispatchers, at the time of the stop is considered in determining whether reasonable suspicion exists. *Id.* Information provided to police by a citizen who identifies herself and may be held to account for the accuracy and veracity of her report is regarded as reliable. *Id.* at 915.

We begin by reviewing the evidence in the light most favorable to the verdict. Officer Brian Everitt testified he had been with the Dallas Police Department for three years. Before that, he was a military police officer in the Air Force for seven years. About 2:00 a.m. on July 7, 2016, he was on duty as a patrol officer when he was assigned to investigate a 911 call concerning criminal mischief at a nearby apartment complex. Everitt was in full police uniform and driving a marked patrol vehicle.

Bernadette Coronado testified she called 911 after she heard breaking glass in the laundry room next to her apartment. She called again when she heard footsteps, looked outside, and saw a man wearing a flowered shirt and a white hat pulling on the broken glass in the window of the laundry room.

The dispatcher reported to Everitt that the caller heard glass break near the laundry room, looked outside, and saw a man wearing a flowered shirt and a white hat walking away from the laundry area. Everitt pulled into the apartment complex less than five minutes after receiving the report. When he turned toward the laundry, Everitt saw Berry about 100 yards away walking toward him wearing a flowered shirt and a white hat. Everitt stopped his patrol car and asked Berry to come towards him. Everitt told Berry to stand in front of the patrol car so he would be on the dashboard video camera the entire time.[1] Everitt identified himself as a Dallas Police Officer and asked if Berry had a driver's license or identification. Berry said he did not have any identification with him. Everitt then asked for his name and birthdate. Berry said his name was Donald Berry with a birthdate of April 30, 1966.

Berry remained standing in front of the patrol car while Everitt performed a computer search with this information. After performing several computer searches using the name with and without the birthdate, Everitt obtained a record for an Arthur Berry using an alias of Donald Berry. The record included a photograph of Berry and a different birthdate. A check using Berry's correct name and birthdate returned an outstanding warrant for him from the U.S. Marshall's Office.

Everitt testified that at the time Berry gave the false name and birthdate, Berry was detained for possible vandalism and criminal mischief. Berry was identified as a suspect

---

[1] Everitt testified his dashboard camera recorded the interaction, however, he did not "tag" the recording to be preserved in connection with this case, therefore the recording was not available for trial.

wearing a flowered shirt and white hat in connection with that offense. Based on the description given by the dispatcher and what Everitt observed, Everitt concluded he had reasonable suspicion to stop Berry and lawfully detain him. At that time, Berry was a fugitive under the warrant from the U.S. Marshall's Office.

Berry argues the evidence is insufficient because when Everitt initially described the encounter, he asked for Berry's name immediately after directing him to come over to the patrol car. However, Everitt later described the encounter in more detail and explained he requested Berry's name and date of birth after asking for his driver's license or identification. Everitt's testimony indicates this request was made after Everitt directed Berry to come over to the patrol car and stand in front of the car in view of its camera. We presume the jury resolved any conflicting inferences about the timing of Everitt's request in favor of its verdict and defer to that determination. *See Clayton*, 235 S.W.3d at 778.

Based on the evidence, a rational jury could have concluded Berry yielded to Everitt's show of authority in directing Berry to come over to the patrol car and stand in front of it where he would be on camera the entire time. *See Wade*, 422 S.W.3d at 669–70 (holding a Fourth Amendment seizure requires submission to show of authority). The evidence supports the conclusion that a reasonable person under the totality of the circumstances would not have felt free to disregard Everitt's direction to stand at the front of the patrol car or his request for identifying information. At that point, Berry gave Everitt a false name and date of birth. A rational jury could have concluded from the evidence that Berry intentionally gave a false name and birthdate to Everitt, a peace officer, who lawfully detained him for the criminal mischief offense and that Berry was a fugitive from justice at the time. *See* TEX. PENAL CODE ANN. § 38.02(b), (d)(2). We conclude the evidence is sufficient to support the jury's verdict. *See Jackson*, 419 U.S. at 319. We overrule Berry's first issue.

Berry argues in his second issue that the judgment and bill of costs improperly assess fees for his court appointed attorney when there is no evidence his financial resources enable him to pay the fees. The State agrees there is no evidence in the record to rebut the presumption that Berry's indigence continued throughout the remainder of the proceedings.

A trial court may require a defendant to reimburse court appointed attorney's fees if the court determines the defendant has the financial resources to offset the fees in whole or in part. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g). The defendant's financial resources and ability to pay are critical elements in the trial court's determination of the propriety of ordering reimbursement of court-appointed attorney's fees. *Mayer v. State*¸ 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). A defendant may challenge the sufficiency of evidence of his financial resources and ability to pay for the first time on appeal without objecting to the order for reimbursement in the trial court. *Id*.

The trial court found Berry indigent and appointed counsel to represent him at trial and on appeal. At sentencing, the trial court informed Berry he would be given "back time credit for the jail time and court costs in the case" and "[u]nless there are some other holds on you, you will be free to go after you clear through the jail." The written judgment simply states "Yes" next to the section titled "Costs." However, the judgment contains a preprinted form order stating:

> It is further ordered that the Defendant pay . . . court costs, [and] expenses of legal services provided by the court appointed attorney or public defender in this cause, if any . . . . The Judge finds that the Defendant has the financial resources to enable the Defendant to offset said costs in the amount ordered.

The certified bill of costs prepared by the clerk after judgment shows an itemized list of fees totaling $462.00. This includes $150.00 for court appointed attorney's fees. However, the bill of costs shows there is no balance remaining due from Berry. This appears to reflect credit for time served. The State does not object to modifying the judgment to delete the order to pay

attorney's fees.

We agree there is no evidence in the record to rebut the presumption of indigency or showing that Berry has the financial resources and ability to pay the attorney's fees shown in the bill of costs. Accordingly, we modify the trial court's judgment to delete the order that Berry pay the expenses of legal services provided by his court appointed attorney and the finding that Berry has the financial resources to enable him to offset those expenses. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). We sustain Berry's second issue to this extent.

As modified, we affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
161466F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ARTHUR LEE BERRY, Appellant

No. 05-16-01466-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court of Appeals No. 2, Dallas County, Texas
Trial Court Cause No. MA-1658501-M.
Opinion delivered by Justice Stoddart.
Justices Bridges and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The order that defendant pay "expenses of legal services provided by the court appointed attorney or public defender in this cause, if any" and the statement that "The Judge finds that the Defendant has the financial resources to enable the Defendant to offset said costs in the amount ordered" are **DELETED**.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 7th day of December, 2017.